```
               UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON


PAUL BRUMFIELD,

        Plaintiff,

v.                                      Case No. 2:09-cv-01223

NAOMI ROBERTS, Health
Services Administrator,
SUBHASH GAJENDRAGAKAR, Doctor,
and WEXFORD HEALTH SOURCES, INC.,

        Defendants.
```

**PROPOSED FINDINGS AND RECOMMENDATION**

On November 6, 2009, Plaintiff, an inmate at Mount Olive Correctional Complex, filed a Complaint alleging that he is receiving deliberately indifferent medical care and attention with regard to an abdominal hernia, his sciatic nerve, arthritis in his right knee, and hepatitis C. (Complaint, docket # 2, at 4.) This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**RELEVANT PROCEDURAL HISTORY**

Doctor Ebenezer Obenza has been dismissed as a defendant in this matter, and the Motions to Dismiss filed by the other defendants were denied. A period of discovery was allowed (# 18),

and presently before the court is a Motion for Summary Judgment filed by defendants Roberts, Gajendragadkar and Wexford Health Sources, Inc. (hereinafter "Wexford") (# 31).

Following the filing of the Defendants' Motion for Summary Judgment, Plaintiff filed a motion for extension of time to file his own Motion for Summary Judgment (# 33). On July 27, 2010, the undersigned entered an Order granting Plaintiff's motion for extension of time, and advising Plaintiff of his right and obligation to file a response to the defendants' motion, in accordance with the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (# 35).

On July 30, 2010, Plaintiff filed a Response to Defendants' Motion for Summary Judgment (# 36), and a Declaration in support thereof (# 37). He did not file his own Motion for Summary Judgment. The defendants filed a Reply on August 12, 2010 (# 38). This matter is ripe for determination.

## ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff's Complaint alleges as follows:

>   Plaintiff claims that the defendants named herein each of them separately and in concert and [acting under color of state law] have been maintaining unconstitutional policies, customs and practices regarding Plaintiff's medical care/treatment, having denied and delayed treatment, care, proper medical evaluations by qualified medical personnel, refusing to treat Plaintiff's pain and suffering in relation to his abdominal hernia, spinal/sciatic nerve in lower back, arthritis in right knee, and hepatitis C liver disease. These denials and delays have went on at a minimum since August 20, 2008 until this present day. Plaintiff is

> still being ignored and suffering and unwanted affliction of extreme pain and suffering by defendants' deliberate indifference to his serious medical needs. * * * (See attached exhibits "A" through "D" in support of exhaustion of administrative remedies.)

(Complaint, # 2, at 4-5.)  Exhibit A grieves his hernia ("I am in severe pain in stomach and back").  (# 2-1, at 2-3.)  Exhibit B grieves his knee ("Pain runs up my leg.  I can't sleep at night").  (Id. at 4-5).  Exhibit C grieves his low back pain and sciatic nerve ("severe, agonizing and debilitating pain, prevents sleeping and normal movements and functions").  (Id. at 6-7).  Exhibit D grieves his hepatitis C liver disease and the chronic pain associated with it.  (Id. at 8).  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (# 2 at 5).

## STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light

most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(e)(2); Id. at 322-23.

> [A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment, should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406,

414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### FACTS AS CONTAINED IN THE MEDICAL RECORDS

In support of their Motion for Summary Judgment, the defendants have submitted an Affidavit of Defendant Naomi Roberts, R.N., which contains a summary of Plaintiff's medical treatment during the relevant time period, and has attached thereto a Synopsis of Care and some other relevant medical records (# 31, Attach. 1, Aff. of Naomi Roberts, R.N., and Exhibits 1-7). The following facts are drawn from those records:

Wexford became the medical provider at MOCC on May 1, 2008. The Synopsis of Care indicates that Plaintiff was seen by Dr. Gajendragadkar on May 6, 2008, for Plaintiff's complaints of an abdominal hernia and knee pain. Dr. Gajendragadkar's impression at that time was that Plaintiff had a reducible hernia and mild degenerative joint disease. He found that these conditions were not severe and recommended that the conditions be treated conservatively, with no surgery recommended at that time. (# 31, Ex. 1).

On May 9, 2008, Plaintiff was examined by Dr. Obenza for the same complaints as those examined by Dr. Gajendragadkar just three days before. X-rays of Plaintiff's abdomen and right knee were

5

ordered. Dr. Obenza felt that Plaintiff's complaints were not confirmed by the physical exam. He thought that Plaintiff might be suffering from irritable bowel syndrome. Plaintiff was prescribed Naprosyn and Motrin for pain, and Fiberlax and Colace to treat constipation. Dr. Obenza discussed Plaintiff's symptoms with the Regional Manager, who agreed with the current treatment. (Id.)

On July 1, 2008, Plaintiff's x-ray results were discussed with him. The x-rays showed that his right knee was arthritic with chondromalacia changes. His chest x-ray showed no active disease, and his abdominal studies were normal. (Id.)

On August 25, 2008, Plaintiff was seen in Nurse's Sick Call for complaints of pain in his stomach, knee and back, which he believed was caused by his hernia. He was referred to the doctor. and was continued on his current prescription for Motrin/Naprosyn. (Id.)

On September 15, 2008, Plaintiff was seen in Nurse's Sick Call for pain in his leg and hip. The Synopsis of Care states that he was "medicated per protocol." (Id.)

On October 3, 2008, Plaintiff was seen in Physician's Sick Call for complaints of pain in his joints. The Synopsis of Care indicates that Plaintiff would be treated with Motrin/Naprosyn, and that his hepatitis C would be monitored. (Id.)

According to the Roberts Affidavit, a treatment plan was established to monitor Plaintiff's hepatitis C through lab studies,

including annual blood work and liver function testing. (# 31, Attach. 1, ¶ 3 and Ex. 2). The Roberts Affidavit further indicates that Plaintiff had twice refused to have lab tests performed on October 13, 2008 and December 7, 2008. However, lab work was performed on June 17, 2009, which indicated that no intervention for Plaintiff's hepatitis C was necessary at that time. (Id., ¶¶ 4-6 and Exs. 4 and 5). The Roberts Affidavit further indicates that Plaintiff refused an annual physical on July 29, 2009. (Id., ¶ 7 and Ex. 6).

On February 3, 2009, Plaintiff was seen in Nurse's Sick Call with a complaint of pain in his right side and pain in the right leg. He was treated with Motrin and was also given some lotion for dry skin. (Id.)

On March 27, 2009, Plaintiff was seen at Physician's Sick Call for a complaint of right knee pain and abdominal "cramps." Upon examination, his abdomen demonstrated mild tenderness or organomegaly. The Synopsis of Care further states Plaintiff's knee was tender and that he had some soreness related to his hepatitis C. The doctor increased his Motrin to three (3) times per day to treat his pain. Blood pressure checks were ordered twice a day and further blood tests were ordered, which were the studies done on June 17, 2009. (Id. and Ex. 3).

On July 9, 2009, Plaintiff's lab results were reviewed with him. A Physician's Assistant discussed Plaintiff's increased

7

cholesterol levels and educated him about proper diet and exercise. (Id.) As noted above, Plaintiff's blood work did not indicate that any intervention was necessary with regard to Plaintiff's hepatitis C. (# 31, Attach. 1, ¶ 4 and Ex. 3).

On July 20, 2009, Plaintiff was seen again in Nurse's Sick Call for complaints about pain from his hernia, back and knees. He was referred to a Physician's Assistant. It was noted that he was being treated with Motrin. (Id.)

On July 28, 2009, Plaintiff was seen by a Physician's Assistant. He was given Diflucan and Nystatin cream for a rash. (Id.) As noted previously, on July 29, 2009, Plaintiff refused his annual physical. (# 31, Attach. 1, ¶ 7 and Ex. 6).

On August 20, 2009, Plaintiff was again seen by a Physician's Assistant for complaints of pain in his right hip, right knee and back. The Physician's Assistant discontinued the use of Motrin and started Plaintiff on Naprosyn. His impression was that the pain was caused by arthritis. (Id.)

On August 31, 2009, Plaintiff was seen in Nurse's Sick Call for a complaint that the Naprosyn he was taking was not treating his pain. He was referred to see a doctor. (Id.)

On September 4, 2009, Plaintiff was seen in Physician's Sick Call, where he was evaluated for pain in his knee, back and abdomen. The doctor found that Plaintiff's liver was enlarged, that his knee was arthritic, and that he had post-traumatic back

pain. His treatment with Naprosyn was continued. (<u>Id.</u>)

On October 20, 2009, Plaintiff was seen in Nurse's Sick Call for right knee and stomach pain. Plaintiff again complained that the Naprosyn was not helping, and stated that Motrin had been more effective to treat his pain. (<u>Id.</u>)

On November 6, 2009, Plaintiff was seen in Physician's Sick Call for stomach and knee pain. His abdominal exam showed that his abdomen was soft and he had no nausea or diarrhea. His knee showed no edema (swelling). He was diagnosed with arthritis with degenerative joint disease. He was prescribed Feldene for knee pain and was given Tums and Mylanta for his stomach discomfort. (<u>Id.</u>)

Plaintiff was again seen in Nurse's Sick Call on November 30, 2009, complaining that his current treatment was not helping his pain. He was again referred to see a doctor. (<u>Id.</u>) According to the Roberts Affidavit, Plaintiff was seen by a doctor on December 2, 2009, and was prescribed the following medications: Buspar, 15 mg for 180 days and Celexa 20 mg for 5 days. (# 31, Attach. 1, ¶ 8). By this time, Plaintiff had filed the instant Complaint.

## ANALYSIS

**A.  Deliberate indifference standard.**

Federal courts are discouraged from interfering with the daily operations and administration of state correctional facilities. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 562 (1979) (warning courts

against becoming "enmeshed in the minutiae of prison operations"). Inquiry of federal courts into prison management must be limited to the issue of whether a particular administrative action violates the federal Constitution. Id. Plaintiff has alleged that each of the defendants has violated his Eighth Amendment right to be free from cruel and unusual punishment.

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free of cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component). Estelle v. Gamble, 429 U.S. 97 (1976). The Court found that deliberate indifference can be demonstrated in at least three different ways: "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." 429 U.S. at 104-05 (citations omitted).

Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1976)).

In Smith v. Smith, 589 F.3d 736 (4th Cir. 2009), the Fourth Circuit ruled that an inmate stated a claim against a prison nurse for her alleged deliberate indifference to the plaintiff's serious medical need when she tore up the paperwork needed for him to receive treatment. Her actions delayed his treatment from May 20 to June 6. Delayed medical treatment can constitute a manifestation of deliberate indifference. Estelle, 429 U.S. at 104-05 n.11 (citing Westlake v. Lucas, 537 F.2d 857, 859 (6th Cir. 1976)).

The defendants' Motion for Summary Judgment asserts that there is no genuine issue of material fact concerning the defendants' treatment of Plaintiff and that they were not deliberately indifferent to plaintiff's serious medical needs. Accordingly, the defendants assert that they are entitled to judgment as a matter of law on Plaintiff's deliberate indifference claims. (# 31 at 1). Their Memorandum in Support of the Motion argues:

> There is no question that Mr. Brumfield has been seen regularly and treated regularly by the Wexford defendants with respect to his hernia condition, his right knee pain, other complaints of pain and his hepatitis C. Within days of May 1, 2008, Mr. Brumfield had been examined and evaluated by Dr. Obenza and Dr. Gajendragadkar and his case discussed with the Regional Director. They all concurred that his conditions did not require surgery. Thereafter, Mr. Brumfield was repeatedly seen by nurses, physicians' assistants, and the physicians. He was prescribed medication for his pain and other medications for his ailments, including dry skin.
>
> It is clear from the Affidavit and medical records that Mr. Brumfield's hepatitis C was monitored

11

> periodically by physical examination and laboratory tests. Despite the need for regular and periodic lab work, Mr. Brumfield twice refused necessary laboratory work in October and December of 2008. Despite Mr. Brumfield's assertions that he is in terrible pain and being ignored by physicians, he refused his annual physical on July 29, 2009. Despite his non-compliance with the recommended medical procedures, the medical staff continued to evaluate and treat Mr. Brumfield. They finally were able to obtain laboratory studies in June of 2009. These studies again confirmed that Mr. Brumfield's hepatitis C had not advanced so as to require medical intervention. In his Complaint and his Response to the Motion to Dismiss, Mr. Brumfield demands drug intervention, including the administration of Interferon. However, failure to follow Mr. Brumfield's choice of medical care does not constitute deliberate indifference when the physicians have made a reasoned decision to proceed otherwise.

(# 32 at 9).

The defendants further assert that, while it is obvious that Plaintiff has complaints of pain, the doctors have questioned the amount of pain of which he has complained, in conjunction with their physical findings, and assert that Plaintiff is merely drug seeking. (Id. at 10). Nevertheless, the defendants have continued to treat Plaintiff with various pain medications. (Id.)

Plaintiff's Response to the Motion for Summary Judgment challenges the admissibility of the Roberts Affidavit on various evidentiary grounds. His arguments lack merit. As a Registered Nurse and Wexford's Health Services Administrator at MOCC, Ms. Roberts has sufficient personal knowledge to provide competent testimony concerning Plaintiff's care.

Plaintiff's Response (# 36), which is supported by his own Declaration (# 37), denies that he refused lab work to monitor his hepatitis C, and further asserts that he refused to have his annual physical in July of 2009 because he was in too much pain from his hernia to walk to the medical unit for the examination. (# 36 at 4; # 37 at 1-2). Plaintiff further asserts that the two medications he was prescribed in December of 2009, Buspar and Celexa, were drugs prescribed by the facility's psychiatrist, and have nothing to do with the treatment of his hernia or hepatitis C. (# 36 at 4; # 37 at 3). Finally, Plaintiff's Response complains that the medical staff's response to his complaints consisted of prescribing pain medication that they knew to be ineffective, and taking away the hernia belt that the prior medical provider had prescribed for him. Plaintiff further asserts that the defendants told him that he did not have a hernia. Plaintiff asserts that such denials "seem[] to be a practice of Defendant Wexford Health Sources." (# 36 at 5; # 37 at 2-3). Plaintiff asserts that the defendants have not met the burden of showing that they are entitled to judgment as a matter of law and requests that their motion be denied. (# 36 at 5).

The undersigned notes that Plaintiff's Declaration states that he sought discovery of Wexford's "guidelines, policies and procedures for the treatment, repair and evaluation of abdominal hernias i[n]guinal and otherwise" and that he got no response to

his request. (# 37 at 4). The defendants addressed this issue in their Reply, stating that Plaintiff served the discovery request on June 22, 2010, eight days before the discovery deadline of June 30, 2010. Thus, Plaintiff's request was not made in a timely manner in which the defendants had a full 30 days to respond. Since the discovery deadline expired before the 30 days was over, the defendants did not respond to the request; nor did they move for a protective order. (# 38 at 4-5).

Whether or not the discovery request was timely, or whether the defendants were within their rights not to respond, the undersigned finds that the issue of Wexford's policies, customs or practices only comes into play if the court finds that either of the individual defendants was deliberately indifferent to Plaintiff's serious medical needs. Therefore, the discovery request was not immediately relevant.

The defendants' Reply further addresses Plaintiff's Response as follows:

> In his Declaration, the plaintiff states that he never refused lab work. However, the documents attached to the Affidavit, which are authenticated by the Affidavit, show otherwise. However, it is not necessary for this Court to determine whether Mr. Brumfield did refuse laboratory tests in order to determine the issue of deliberate indifference. The fact is that laboratory tests were ordered. If they were not taken as shown by the Affidavit, lab results were obtained on June 17, 2009. Ms. Roberts, by her training, skill and experience, is obviously qualified to assist the Court with the interpretation of the laboratory results. Again, the plaintiff has offered no evidence that Ms. Roberts' interpretation of those results is incorrect.

14

> The plaintiff does not dispute that he refused his annual physical as stated in the Affidavit and in the medical record attached thereto. He does offer an excuse for his refusal. Although there is no documentation of the excuse other than the plaintiff's Declaration, this is not a material issue with respect to the determination of deliberate indifference. The important fact is than an annual physical was ordered for Mr. Brumfield and that he refused it. Despite his refusal, the defendants continued to administer care.

(# 38 at 3).

The Reply further states that defendants noted that Plaintiff was prescribed Buspar and Celexa, which treat depression and anxiety, to show that all of Plaintiff's medical needs were being addressed; not to suggest that these drugs were prescribed to treat either his hernia or hepatitis C. (<u>Id.</u> at 3-4). The Reply further argues:

> Plaintiff further attempts to create a genuine issue as to a material fact by his Declaration. In the Declaration, the plaintiff mentions, for the first time, that a hernia belt was removed from his cell on or about May 2008. Mr. Brumfield did not have any such allegation in his Complaint or any of the grievances attached to the Complaint. However, his inclusion of this episode in his Declaration still does not raise a genuine issue of material fact with respect to his claim of deliberate indifference. Although he fails to mention the expiration date in his Declaration, the order/receipt for medical product attached to his Declaration clearly shows that the order expired on April 20, 2008. Even Mr. Brumfield's Declaration states that the hernia belt was removed because the physicians no longer thought the belt was justified. His Declaration also seeks to bolster his claim of deliberate indifference by actually referring to the fact that three (3) separate physicians at two (2) separate facilities have determined that he does not suffer from a hernia so as to require treatment. In fact, his filings reveal that he was evaluated on March 3. 2010, by Dr. Proctor at Huttonsville who determined

15

that he did not have a hernia.

(Id. at 4).

The standard to demonstrate deliberate indifference to a serious medical need by correctional officials and health care providers is very difficult to meet. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

Rush v. VanDevander, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); Banks v. Green Rock Correctional Center Medical Dept., 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). For example, in Sosebee, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct might establish deliberate indifference to a serious medical need.

In Webster v. Jones, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye. Id. at 1286. Subsequently, a specialist found that Webster's vision had

16

deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. Id. The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. See also, Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977); see also Taylor v. Couture, 2010 WL 4073790 (N.D. Ill., Oct. 12, 2010) (granting summary judgment to defendants on Plaintiff's claim that defendants were deliberately indifferent to his chronic pain by reducing or changing his pain medication).

Plaintiff has not demonstrated anything more than a disagreement with his medical providers concerning the appropriate

treatment for his various medical conditions. Plaintiff has been consistently examined and prescribed medications for his pain and stomach issues, and his hepatitis is being monitored. Thus, Plaintiff has failed to show that the defendants have been deliberately indifferent to Plaintiff's serious medical needs.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact, and that the defendants are entitled to judgment as a matter of law on Plaintiff's claims. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' Motion for Summary Judgment (# 31) and dismiss this case from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff and to transmit it to counsel of record.

    January 19, 2011
          Date

Mary E. Stanley
United States Magistrate Judge